IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
SEPTEMBER 19, 2000 Session

## MEREDITH ANNMARIE WARREN v. JOHN DAVID WARREN, JR.

**Direct Appeal from the Chancery Court for Shelby County**
**No. D22911-1; The Honorable Walter L. Evans, Chancellor**

_____

**No. W1999-02108-COA-R3-CV - Filed March 12, 2001**

_____

In this child custody case, the Appellant and the Appellee agreed to joint custody of their child with the Appellee being the primary custodial parent. After learning of the Appellee's plans to move out of state with the child, the Appellant filed a Petition for Opposition of Minor Child's Move from the State of Tennessee and/or Petition for Change of Custody. The trial court granted temporary custody to the Appellant pending a reevaluation of the matter. After a hearing, the trial court ordered joint custody of the child to the Appellant and the Appellee and decreed that the child live primarily with the Appellee out of state.

The Appellant appeals from the Order Awarding Joint Custody entered by the Chancery Court of Shelby County. For the reasons stated herein, we affirm the trial court's decision.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Linda L. Holmes, for Appellant

Ron Harvey, for Appellee

**OPINION**

### I. Facts and Procedural History

The Appellant, John David Warren, Jr. ("Mr. Warren"), and the Appellee, Meredith Annmarie Warren ("Ms. Warren"), were married on April 21, 1990. Their only child, Heather, was born on January 9, 1991. On January 4, 1994, Mr. and Ms. Warren were divorced pursuant to a Final Decree of Divorce entered by the Chancery Court of Shelby County. Mr. Warren and Ms.

Warren agreed through a Marital Dissolution Agreement to joint custody of Heather with Ms. Warren being the primary custodial parent.

In early 1994, Heather's paternal grandmother and step-grandfather, Bobby and Rita Coward ("the Cowards"), filed a Petition for Temporary Custody of Heather. The court awarded temporary custody of Heather to the Cowards, and on August 8, 1994, the court ratified the temporary custody arrangement with the stated goal of returning custody of Heather to Ms. Warren at some point in the future. Ms. Warren married Eric Haddock ("Mr. Haddock") on June 30, 1995. On April 9, 1996, Ms. Warren filed a Petition to Modify Custody and Support Orders. After a hearing, the court entered an order on August 14, 1996, awarding custody of Heather to Ms. Warren effective December 24, 1996.

By letter dated November 24, 1998, Ms. Warren's attorney advised Mr. Warren's attorney that Ms. Warren and Heather were moving to Marion, Illinois for Mr. Haddock's new job. Mr. Warren filed a Petition for Opposition of Minor Child's Move from the State of Tennessee and/or Petition for Change of Custody on December 4, 1998. Ms. Warren subsequently filed a Request for Leave to Remove Minor Child from Jurisdiction and to Modify Visitation. On January 27, 1999, the trial court denied Ms. Warren's Petition to Allow Removal of Minor Child from the Jurisdiction and granted temporary custody of Heather to Mr. Warren for three months with custody to be reevaluated on April 13, 1999.

On July 28, 1999, the trial court held a full hearing on the matter.[1] The trial court admitted facts predating the January 27, 1999 order, the August 14, 1996 order, and the Final Decree of Divorce.[2] The trial court subsequently entered an Order Awarding Joint Custody of Heather to Mr. Warren and Ms. Warren and decreed that Heather live primarily with Ms. Warren at her new residence in Marion, Illinois. This appeal followed.

## II. Standard of Review

In child custody cases, appellate review is *de novo* upon the record with a presumption of the correctness of the trial court's findings of fact. See TENN. R. APP. P. 13(d); see also Hass v. Knighton, 676 S.W.2d 554, 555 (Tenn. 1984); Dalton v. Dalton, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993). In matters of divorce and child custody, trial courts are vested with broad discretion, and appellate courts will not interfere with the trial court's decision except upon a showing of erroneous exercise of that discretion. See Whitaker v. Whitaker, 957 S.W.2d 834, 836-37 (Tenn. Ct. App. 1997).

---

[1] The hearing was postponed from April 13, 1999 until July 28, 1999 to allow the guardian ad litem time to visit Ms. Warren's home in Illinois.

[2] The trial court heard testimony concerning Mr. Warren's driving offenses prior to the Final Decree of Divorce and the August 14, 1996 order and Mr. Warren's acts of violence, drug use, and a stay in a boy's home prior to the parties' marriage and divorce. Testimony was also given concerning Mr. Warren's lack of contact with Heather following the parties' divorce.

### III. Law and Analysis

Mr. Warren raises three issues for our review: (1) whether the trial court erred in allowing testimony of facts at the July 28, 1999 hearing which predated the Final Decree of Divorce and the January 27, 1999 order, or, in the alternative, the August 14, 1996 order; (2) whether the trial court's January 27, 1999 order granting temporary custody to Mr. Warren was a final order such that Ms. Warren should have shown a material change in circumstances at the July 28, 1999 hearing in order to be deemed the primary custodial parent; and (3) whether the trial court erred in deeming Ms. Warren the primary custodial parent. We examine each of these issues in turn.

Mr. Warren first argues that the trial court erred in allowing testimony of facts at the July 28, 1999 hearing which predated the Final Decree of Divorce and the January 27, 1999 order, or in the alternative, the August 14, 1996 order because admission of these facts was barred by res judicata or collateral estoppel. The Tennessee Supreme Court described res judicata and its relative counterpart, collateral estoppel, as follows:

> The doctrine of res judicata bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit. Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit.

Goeke v. Woods, 777 S.W.2d 347, 349 (Tenn.1989) (quoting Massengill v. Scott, 738 S.W.2d 629, 631 (Tenn.1987)). A party asserting the defense of res judicata or collateral estoppel must demonstrate that "1) the judgment in the prior case was final and concluded the rights of the party against whom the defense is asserted, and 2) both cases involve the same parties, the same cause of action, or identical issues." Richardson v. Tennessee Bd. of Dentistry, 913 S.W.2d 446, 459 (Tenn. 1995) (citing Scales v. Scales, 564 S.W.2d 667, 670 (Tenn. Ct. App.1977)).

We first dispose of Mr. Warren's argument concerning the January 27, 1999 order. Res judicata and collateral estoppel apply only if the prior case concluded in a final judgment. See Richardson, 913 S.W.2d at 459 (citing A.L. Kornman Co. v. Metropolitan Gov't of Nashville & Davidson County, 391 S.W.2d 633, 636 (Tenn. 1965)). Mr. Warren contends that the January 27, 1999 order was a final judgment. As we previously stated, the January 27, 1999 order was a temporary custody order which did not constitute a final judgment. Because the January 27, 1999 order was not a final judgment, admission of facts predating this order was not barred by res judicata or collateral estoppel.

Mr. Warren argues, in the alternative, that if this court does not deem the January 27, 1999 order to be a final judgment, then the August 14, 1996 order was a final judgment such that admission of facts predating the August 14, 1996 order was barred by res judicata or collateral

estoppel. Mr. Warren also asserts that admission of facts predating the Final Decree of Divorce was barred by res judicata or collateral estoppel. In considering the record as a whole and the trial court's findings following the July 28, 1999 hearing, we find that the facts predating the Final Decree of Divorce and the August 14, 1996 order admitted at the hearing did not affect the trial court's judgment. See TENN. R. APP. P. 36(b). The trial court stated throughout the hearing that it was primarily interested in testimony concerning events that happened subsequent to the divorce. When reasoning through its findings following the hearing, the trial court's only reference to facts predating the Final Decree of Divorce and the August 14, 1996 order concerned Mr. Warren's lack of contact with Heather following the parties' divorce. Mr. Warren waived his right to object to these particular facts on appeal. Mr. Warren's attorney elicited these facts during direct examination of Mr. Warren. Because Mr. Warren affirmatively raised these facts before the trial court, he cannot now object on appeal to the admission of these facts. See TENN. R. APP. P. 36(a). Even if admission of facts predating the August 14, 1996 order and the Final Decree of Divorce was barred by res judicata or collateral estoppel, we find that this was harmless error.

In child custody cases, the law is well established that when a decree awarding custody of children has been entered, "that decree is res judicata and is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way to make the welfare of the children require a change in custody." Long v. Long, 488 S.W.2d 729, 731-32 (Tenn. Ct. App. 1972) (citing Hicks v. Hicks, 176 S.W.2d 371 (Tenn. Ct. App. 1943)). In other words, once the trial court has made an initial determination with respect to custody, it cannot entertain a subsequent petition to modify custody absent a material change in circumstances such that the welfare of the child demands a redetermination. See, e.g., Massengale v. Massengale, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995).

The burden is on the non-custodial parent to prove a material change in circumstances. See Musselman v. Acuff, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991). A temporary order of custody does not constitute a final order shifting the burden of proof to the custodial parent. In Placencia v. Placencia, 3 S.W.3d 497 (Tenn. Ct. App. 1999), this court addressed a factually similar situation to the case at bar. Mr. Placencia, the father of a minor child, was granted custody of the child pursuant to a final decree of divorce. See id. at 499. After discovering that Mr. Placencia intended to relocate with the child out of state, Mrs. Placencia, the mother of the child, filed a petition for change of custody. See id. The trial court granted temporary custody to the mother pending a hearing on the matter. See id. At the hearing, the trial court placed the burden of proving a material change in circumstances on the mother, the non-custodial parent, regardless of the fact that the court had given her temporary custody of the child. See id. at 499-502. We reversed the trial court's holding and found that Mrs. Placencia failed to meet her burden of proof. See id. at 502-03. We did not find, however, that the burden of proving a material change in circumstances should have been shifted to Mr. Placencia, the custodial parent, simply because Mrs. Placencia had temporary custody of the child.

In the case at bar, Mr. Warren argues that the trial court's temporary grant of custody to him on January 27, 1999 was a final order of custody; thus, in order for Ms. Warren to have custody of

Heather, she should have demonstrated a material change in circumstances at the July 28, 1999 hearing. Though the trial court termed the award of custody "temporary," Mr. Warren argues that all custody orders are temporary in nature. We disagree. The law makes a distinction between temporary and final orders of custody. "An interim order is one that adjudicates an issue preliminarily; while a final order fully and completely defines the parties' rights with regard to the issue, leaving nothing else for the trial court to do." State, ex rel., McAllister v. Goode, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997) (citing Vineyard v. Vineyard, 170 S.W.2d 917, 920 (Tenn. 1942)). Trial courts have discretion to grant temporary custody arrangements in circumstances "where the trial court does not have sufficient information to make a permanent custody decision or where the health, safety, or welfare of the child or children are imperiled." King v. King, No. 01A01-91-10PB00370, 1992 WL 301303, at *2 (Tenn. Ct. App. Oct. 23, 1992).

The trial court's order granting custody to Mr. Warren conveys no suggestion of finality but, instead, characterizes the custody award as "temporary," and states that custody would be reevaluated at a hearing three months from the date of that order. We find this custody order to be a continuance of the case pending a final hearing on the matter. Because the order granting Mr. Warren custody was only temporary, Ms. Warren did not have to show a material change in circumstances at the July 28, 1999 hearing in order to have custody of Heather.

Finally, Mr. Warren argues that the trial court erred in deeming Ms. Warren the primary custodial parent of Heather because the evidence presented at the July 28, 1999 hearing preponderated against such a finding. We disagree. The party seeking a change in custody has the initial burden of showing a material change in circumstances which affects the welfare of the child. See Harris v. Harris, 832 S.W.2d 352, 353 (Tenn. Ct. App. 1992). A "material change in circumstances" justifying modification of a child custody order may include factors arising after the initial determination or changed conditions that could not be anticipated at the time of the original order. See Blair v. Badenhope, 940 S.W.2d 575, 576 (Tenn. Ct. App. 1996) (citing Dalton v. Dalton, 858 S.W.2d 324 (Tenn. Ct. App. 1993)). If the party seeking a change in custody satisfies the burden of proving a material change in circumstances, the trial court will then consider the petition to modify custody using a best interests standard. See Woolsey v. McPherson, No. 02A01-9706-JV-00125, 1998 WL 760950, at *2 (Tenn. Ct. App. Nov. 2, 1998).

As this court has previously recognized, there is a strong presumption in favor of the existing custody arrangement. See Smithson v. Eatherly, No. 01A01-9806-CV-00314, 1999 WL 548586, at *2 (Tenn. Ct. App. July 29, 1999) (citing Taylor v. Taylor, 849 S.W.2d 319, 332 (Tenn. 1993)). The party seeking to change the existing custody arrangement has the burden of proving both that the child's circumstances have materially changed in a way that was not reasonably foreseeable at the time of the original custody decision and that changing the existing custody arrangement will serve the child's best interests. See Geiger v. Boyle, No. 01A01-9809-CH-00467, 1999 WL 499733, at *3 (Tenn. Ct. App. July 16, 1999) (citing Seessel v. Seessel, 748 S.W.2d 422, 424 (Tenn. 1988); Smith v. Haase, 521 S.W.2d 49, 50 (Tenn. 1975); Hall v. Hall, No. 01A01-9310-PB-00465, 1995 WL 316255, at *2 (Tenn. Ct. App. May 25, 1995); McDaniel v. McDaniel, 743 S.W.2d 167, 169 (Tenn. Ct. App. 1987)).

Under this standard, the primary inquiry is whether there has been a material change in the child's circumstances. Although there is no concrete definition for what constitutes a material change in circumstances, this court has enumerated several factors that should be taken into consideration when determining whether such a change has occurred. In general, the change must occur after the entry of the order sought to be modified, and the change cannot be one that was known or reasonably anticipated when the order was entered. See Dalton v. Dalton, 858 S.W.2d 324, 326 (Tenn. Ct. App. 1993); Turner v. Turner, 776 S.W.2d 88, 90 (Tenn. Ct. App. 1988). In addition, the material change in circumstances must be a change in the child's circumstances, not the circumstances of either or both of the parents. See McCain v. Grim, No. 01A01-9711-CH-00634, 1999 WL 820216, at *2 (Tenn. Ct. App. Oct. 15, 1999). Finally, the change must affect the child's well-being in a material way. See Dailey v. Dailey, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981).

Mr. Warren expresses concern over Ms. Warren's desire to relocate with Heather to Illinois. In Taylor v. Taylor, 849 S.W.2d 319 (Tenn. 1993), the Tennessee Supreme Court held that the removal of a child from the jurisdiction was not, in and of itself, a material change in circumstances sufficient to justify the modification of an original custody order. See id. at 332. In Aaby v. Strange, 924 S.W.2d 623 (Tenn. 1996), the court further explained that "a custodial parent will be allowed to remove the child from the jurisdiction unless the non-custodial parent can show, by a preponderance of the evidence, that the custodial parent's motives for moving are vindictive – that is, intended to defeat or deter the visitation rights of the non-custodial parent." Id. at 629. Additionally, section 36-6-108(d) of the Tennessee Code provides that, in situations where parents are not spending substantially equal intervals of time with the child, the parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:

> (1) The relocation does not have a reasonable purpose;
> (2) The relocation would pose a threat of specific and serious harm to the child which outweighs the threat of harm to the child of a change of custody; or
> (3) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

TENN. CODE ANN. § 36-6-108(d) (Supp. 1999).

In the case at bar, the relocation from Tennessee to Illinois does have a reasonable purpose. Ms. Warren's husband, Mr. Haddock, had been offered an entry level position as a newspaper reporter in Illinois. Mr. Haddock stated that he inquired about positions with several newspapers in west Tennessee, but he was unable to find a position. There is no indication that the relocation poses a threat of specific and serious harm to Heather which outweighs the threat of harm of a change of custody. There is no evidence that Ms. Warren's motive for relocating is vindictive. Thus, because the relocation is reasonable, does not pose a threat of specific and serious harm to Heather which outweighs the threat of harm of a change of custody, and is not the result of vindictive

motives, Ms. Warren's relocation cannot serve as a material change in circumstances warranting a redetermination of custody. See Placencia v. Placencia, 3 S.W.3d 497, 500 (Tenn. Ct. App. 1999).

Mr. Warren alleges additional concerns other than Ms. Warren's removal of Heather to Illinois. First, Mr. Warren contends that Ms. Warren refuses to allow him extra visitation with Heather and "plays games" with the visitation arrangements. Mr. Warren claims that he provides Ms. Warren and her family extra visitation with Heather. Second, Mr. Warren cites the strong bond that Heather has with her paternal grandparents and other Memphis relatives. Third, Mr. Warren notes the testimony of Dr. Ciocca, a child psychologist who spoke with Heather. Dr. Ciocca testified that Heather thrived while living with her father, that Heather liked living with her father and step-mother, that Heather expressed anxiety about visiting her mother and step-father, that Heather did not want to move to Illinois, and that Heather stated that her step-father had been mean to her. Fourth, Mr. Warren states that Heather's grades improved while she lived with him. Fifth, Mr. Warren expresses concern over separate instances when Heather contracted lice and a sunburn while visiting with her mother and instances when Heather came home dirty and hungry after visiting with her mother. Finally, Mr. Warren notes a physical altercation that occurred between Mr. Haddock and him.

We first address Mr. Warren's contention that Ms. Warren refuses to allow Mr. Warren extra visitation and "plays games" with the visitation arrangements. Mr. Warren testified as to one instance on Father's Day in 1999 when Ms. Warren refused to allow Mr. Warren to visit with Heather. Ms. Warren agreed to allow Mr. Warren eight hours visitation with Heather but then reduced the visitation to four hours if he would travel to Illinois to see Heather. When Mr. Warren arrived in Illinois for the four hours visitation, Ms. Warren refused to let Heather go until Mr. Warren signed an agreement stating what time he was picking up Heather and what time he was bringing her back. Mr. Warren did not sign the agreement, and Ms. Warren refused to let Mr. Warren visit with Heather. Ms. Warren testified that she limited visitation to four hours so that Heather could attend Sunday morning and evening church services. Ms. Warren wanted Mr. Warren to sign the agreement to have proof that she was providing Mr. Warren with extra visitation time and to ensure Mr. Warren understood the amount of visitation time he had with Heather. Other than this instance, Mr. Warren did not describe in detail any other conflicts regarding visitation. Based on the aforementioned testimony, we cannot find that Ms. Warren's denial of visitation on one occasion is sufficient to establish a material change in circumstances.

We next address Mr. Warren's contention that Heather has a strong bond with her paternal grandparents and other Memphis relatives. As previously stated, in order to constitute a material change in circumstances, there must be a showing of factors arising after the initial determination or changed conditions that could not be anticipated at the time of the original order. See Blair v. Badenhope, 940 S.W.2d 575, 576 (Tenn. Ct. App. 1996) (citing Dalton v. Dalton, 858 S.W.2d 324 (Tenn. Ct. App. 1993)). The fact that Heather has a strong bond with her paternal grandparents and other Memphis relatives is not an unanticipated change that has occurred since the initial custody determination that establishes a material change in circumstances.

We next address Dr. Ciocca's testimony that Heather thrived while living with her father and liked living with her father and step-mother. These circumstances, though positive, do not establish a material change in circumstances. In <u>Blair v. Badenhope</u>, the court found that "evidence that the child has grown closer to her father and step-mother is a circumstance that is hoped for in granting regular visitation, not an unexpected circumstance." <u>Id.</u> at 576. Moreover, though not necessarily the situation in the case at bar, proof that living with one parent is a more pleasant environment than living with the other parent is not sufficient to warrant modification of a custody decree. <u>See Wall v. Wall</u>, 907 S.W.2d 829, 834 (Tenn. Ct. App. 1995) (citing <u>Contreras v. Ward</u>, 831 S.W.2d 288 (Tenn. Ct. App. 1991)).

We next address Dr. Ciocca's testimony that Heather expressed anxiety about visiting her mother and step-father and did not want to move to Illinois. A child's preference regarding which parent with whom he or she would like to live is but one factor in the court's determination of custody. <u>See Walter v. Walter</u>, No. E1999-0096-COA-R3-CV, 2000 WL 666693, at *4 (Tenn. Ct. App. May 23, 2000). Heather's statement to Dr. Ciocca that she did not want to move to Illinois and expression of anxiety about visiting her mother and step-father are not sufficient to establish a material change in circumstances warranting a redetermination of custody. <u>See King v. King</u>, No. 01-A-01-9803-CV00116, 1999 WL 267007, at *5 (Tenn. Ct. App. May 5, 1999).

We next address Dr. Ciocca's testimony that Heather stated that her step-father had been mean to her. Dr. Ciocca testified that there was no indication that Heather had been abused by her mother and step-father. Mr. Haddock testified that he loves Heather as if she were his own daughter, and he further testified that he doubts Heather said that he is mean. Ms. Warren testified that Heather loves Mr. Haddock and that Mr. Haddock is strict with Heather. From our assessment of the testimony and review of the record, we do not find a material change in circumstances warranting a redetermination of custody.

We next address the improvement in Heather's grades while she lived with her father. Both Mr. Warren and Ms. Warren testified that Heather's grades improved while Heather was living with Mr. Warren. Heather's grades improved from A's and B's to mostly A's. Ms. Warren testified that Heather has always been an A and B student. Ms. Warren also testified that she is very active in Heather's education and helps her with her homework. We do not find that the improvement in Heather's grades while living with her father is substantial enough to establish a material change in circumstances.

We next address Mr. Warren's contention that Heather contracted lice and a sunburn on separate occasions while visiting with her mother and that Heather came home dirty and hungry after visiting with her mother. In this particular case, we agree with the trial court's assessment at trial that "there are a lot of things that happen as relates to the raising of a child, of the caring of a child that really cannot be faulted to either parent; but if a child hasn't had enough breakfast or got a little dirt on their knee, the other parent sees that as negligent, sees it with more emphasis than it may deserve." Ms. Warren testified that Mrs. Coward told her that Heather had already been treated for lice and did not need to be treated again while Heather was visiting Ms. Warren.

Ms. Warren testified that she applies sunscreen to Heather, but Heather has a fair complexion and easily sunburns. Ms. Warren testified that she bathes Heather on Saturday nights but that Heather gets dirty before she returns Heather to Mr. Warren on Sunday after a full day of playing outside. Ms. Warren testified that Heather was a picky eater. Additionally, Ms. Warren testified about a rash Heather had possibly contracted from shampoo and a cavity Heather had in one tooth. From our assessment of the testimony and review of the record, we do not find that Ms. Warren was negligent in her care of Heather. We find these described situations to be normal childhood ailments and conditions. Accordingly, we do not find a material change in circumstances as a result of these situations.

Finally, we address the physical altercation that occurred between Mr. Warren and Mr. Haddock. The altercation occurred as a result of the Father's Day visitation problems. The testimony at trial was controverted as to which party was responsible for starting the altercation. We find it unfortunate, first, that Heather had to witness the altercation and, second, that Mr. Warren and Mr. Haddock resulted to a physical altercation to resolve the visitation problems, but we do not find that this constitutes a material change in circumstances warranting a redetermination of custody.

For the reasons discussed above and from our review of the record, we cannot find that Mr. Warren satisfied his initial burden of showing a material change in circumstances to warrant changing permanent custody from Ms. Warren to himself. Based upon the trial court's statements at the July 28, 1999 hearing, we find that the trial court failed to initially determine whether Mr. Warren satisfied his burden of showing a material change in circumstances. Rather, the trial court considered the case based solely on a best interest analysis. Although we reach the same result as the trial court, but for a different reason, this does not present a problem. "Where a trial judge has reached the correct result, it will not be reversed because he may have predicated it on an erroneous reason." Pearson v. Garrett Fin. Servs., Inc., 849 S.W.2d 776, 780 (Tenn. Ct. App. 1992). The judgment may simply be affirmed on the proper basis. See Allen v. National Bank, 839 S.W.2d 763, 765 (Tenn. Ct. App. 1992). Accordingly, we find that the trial court did not err in deeming Ms. Warren the primary custodial parent of Heather.

## IV. Conclusion

For the foregoing reasons, the decision of the trial court is affirmed. Costs of this appeal are taxed against the Appellant, John David Warren, Jr., for which execution may issue if necessary.

ALAN E. HIGHERS, J.