IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 20, 2001 Session

## LORRIE JEAN BARNES v. RICHARD DARYL BARNES, JR.

**A Direct Appeal from the Chancery Court for Madison County**
**No. 51563      The Honorable Don H. Allen, Judge, Sitting by Interchange**

-------------------

**No. W2000-01285-COA-R3-CV - Filed April 18, 2001**

-------------------

Father filed a petition for change of custody of the parties' three minor children. After an evidentiary hearing, the trial court found that there had been a material change of circumstances and that a change of custody to Father was in the best interest of the children. Mother has appealed. We affirm.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

Michael L. Weinman, Henderson, For Appellant, Lorrie Jean Barnes

Mary Jo Middlebrooks, Jackson, For appellee, Richard Daryl Barnes, Jr.

### OPINION

Lorrie Jean Campbell (formerly Lorrie Jean Barnes) (Mother) and Richard Daryl Barnes, Jr. (Father) were divorced by order entered January 13, 1997. Mother received custody of the parties' three minor children: James Daryl Barnes, born December 25, 1986; Richard Blake Barnes, born December 25, 1989; and Jesse Katherine Barnes, born May 14, 1991. Father was granted visitation. Father remarried in April 1998 and subsequently moved to West Carrollton, Ohio, where he now lives with his wife and her teenaged son.

On June 14, 1999, Father filed a motion for change of custody of the three minor children. The motion alleges that since the granting of the divorce, there has occurred a material change of circumstances warranting a change of custody in that Mother has allowed Don Patrick Campbell to live in the household with the minor children without the benefit of marriage. The motion also alleges that Mr. Campbell abuses alcohol and becomes violent when drinking, that said Campbell has threatened one of the minor children, that said Campbell, while drunk, pushed Blake Barnes off the porch in March of 1999, and that a relative of Mother contacted Father because of her concern

for the welfare of the children. The motion also asserts that Mother has had eight different residences with the minor children since the divorce was granted, that the oldest child, normally a good student, is having trouble at school and with his health because of stress-related problems, that the children have had ongoing problems with head lice and that Mother interferes with Father's visitation in various ways.

An evidentiary hearing was held March 4, 2000 and proof was introduced supporting the above-stated allegations in the motion. In addition, proof was introduced concerning Campbell's use of alcohol and drugs and his resorting to violence while under their influence. Campbell had repeatedly assaulted Mother and is presently incarcerated as a result of such an assault.[1] The record reflects that Mother, while living with Campbell in the household with the children, became pregnant with Campbell's child, and after the child's birth, she and Campbell married. The violence between Mother and Campbell was of such an extent that at least one of the children has hidden in the bathroom during a fight, and another child has had stress-related health problems. The Guardian ad Litem reported that the children advised her that Campbell made inappropriate sexual comments in front of them[2] and that they fear for their Mother's safety.[3] Evidence was also introduced that Mother continues to smoke in the home and in her automobile in spite of the fact that the youngest son has asthma. At the conclusion of the evidentiary hearing, the trial court, in granting Father custody, recited his findings, which were made part of the order for change of custody entered May 26, 2000. The findings provide in part:

> . . . Ms. Barnes has . . . exposed these children to a lot of things since June of '98. She's allowed this Mr. Campbell, Mr. Donald Patrick Campbell, to move in with her. . . ..
>
> In October of '98, he committed a Domestic Assault against her. She continued to live with him, continued to expose her children to this verbal and abusive behavior that Mr. Campbell was. . . guilty of. Ms Campbell even admitted that the children were exposed to drugs and alcohol. Mr. Campbell had a cocaine problem. . . .
>
> In June of '99, while she had custody of the children, she again was assaulted by Mr. Don Campbell. This time, apparently, he was placed on some kind of probation and was ordered to - - to

---

[1] Mr. Campbell was apparently convicted of abusing Mrs. Campbell and was required to attend counseling sessions as part of that conviction. Following the third incident of abuse which occurred within a month of his marriage to Mrs. Campbell, Mr. Campbell's parole was revoked and he was remanded to state custody.

[2] The children apparently told the Guardian ad Litem that Mr. Campbell held a phallic object in front of his groin and told the children that this was what he was going to "stick into their mom."

[3] The parties' oldest child told the Guardian ad Litem that he wanted to continue to live with his mother so he could "protect her."

receive treatment through Teen Challenge. Apparently, he didn't follow through with that. But yet, she continued to have him come back to the home. And even though he was in violation of his probation, he came back to the home. And then, she turns around and marries this person in November of '99. This is the person who has exposed her children to - - to violence, that has been abusive and has made some very inappropriate comments in front of her children and she turns around and marries him and lets him live there in the home with these - - these three young children.

Then, in December of '99, just a month after she's married this guy, he assaults her again. And she was very hesitant about doing anything about it and I don't understand why. But, she waited until January of 2000 before she even filed a report about it and, of course, he was, at that time, convicted of it. He admitted to it. His probation was violated. You know, she never has given up on him. And I submit that the only reason she's giving up on him now is because he's revoked and in jail. I think it's kind of interesting that when she was asked by the - - when the Guardian ad Litem's report was done and she was asked about whether or not - - upon his release from jail, whether or not she would allow him to come back and she said I don't know; I don't know. Well, that's frightening to the Court. You know, this is somebody that's been convicted three different times of assaulting her, that's been abusive in from of her children, and she's willing to take him back again. I just don't understand that.

The Order also enjoins "Mother from allowing the minor children to be in the presence of Don Patrick Campbell at any time."

Mother has appealed, and the sole issue on appeal is whether the trial court erred in granting a change of custody.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

The threshold issue in a motion to modify custody is whether there has been a material change in circumstances since the initial custody determination. ***See, e.g.***, ***Placencia v. Placencia***, 3 S.W.3d 497, 499 (Tenn. Ct. App. 1999); ***Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995); ***Dailey v. Dailey***, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981). Once the trial court determines that the petitioner has demonstrated a material change in circumstances, the court next determines what custody arrangement is in the best interests of the child. ***See, e.g.***, ***Placencia***, 3 S.W.3d at 499; ***Varley v. Varley***, 934 S.W.2d 659, 665-66 (Tenn. Ct. App. 1996); T.C.A. § 36-6-106

(2000 Supp.). Unless the trial court finds a material change in circumstances, however, the court must deny the petition to modify custody. *See Placencia*, 3 S.W.3d at 499.

The non-custodial parent has the burden of proving a change of circumstances. *See, e.g., Nichols v. Nichols*, 792 S.W.2d 713, 714 (Tenn. 1990); *Musselman v. Acuff*, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991). Because an original custody decree is *res judicata*, there is a strong presumption in favor of the custodial parent which the non-custodial parent can only overcome by demonstrating that the alleged change in circumstances is "material." *See Taylor v. Taylor*, 849 S.W.2d 319, 322 (Tenn. 1993); *Nichols*, 792 S.W.2d at 715-16. This Court has said that a material change in circumstances exists "where continuation of the adjudicated custody will substantially harm the child." *Wall v. Wall*, 907 S.W.2d 829, 834 (Tenn. Ct. App. 1995)(citations omitted).

Based upon the evidence in the record, we hold that the trial court properly found a material change in circumstances in this case. The remedy of changed custody is dramatic, and it is only appropriate where the change in the child's circumstances is compelling. *See Musselman v. Acuf*, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991). We believe such compelling circumstances exist here. There is ample evidence in the record to support the allegations of the motion and, together with the proof of numerous residences in three years and the instability of Mother's financial situation, the evidence supports the trial court's finding of a material change of circumstances. Having properly found a material change of circumstances, the trial court then correctly found that a change in custody was in the children's best interest.

T.C.A. § 36-6-106 (Supp. 2000) requires the trial court, in making a determination of the best interest of the children, to consider all relevant factors and provides guidance for the court's consideration. The statute provides:

> § 36-6-106. Child custody
>
> In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
>
> (1) The love, affection and emotional ties existing between the parents and child;
>
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary care giver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory

environment; provided, that where there is a finding, under § 36-6-106(8), of child abuse, as defined in §§ 39-15-401 or 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, [as defined in §§ 39-15-401 or 39-15-402], or child sexual abuse, [as defined in § 37-1-602], against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

T.C.A. § 36-6-106 (2000 Supp.).

In applying the statute to the case at bar, we agree with the trial court's findings that a change in custody to Father is in their best interests. The evidence establishes several statutory factors which

militate against Mother's continued custody of the children. Mr. Campbell's presence in the home poses a serious threat to the physical and mental well-being of the children, and Mother has failed to provide the children with a stable home environment. Finally, we note that Father's situation appears quite stable. He is gainfully employed and has recently moved into a larger home which can more easily accommodate the three children. He appears motivated, yet realistic, about the difficulties he will face in integrating the children into a new home and community.

In support of her position, Mother cites the length of time the children have lived with her and the difficulty of uprooting them from their current situation and moving them to another community in another state. While we agree that it may be a challenge for the children to adapt to a new home and new schools, we believe that the move will result in a far more stable home environment for the children in the long run. It can hardly be easy for a child to move seven times in a span of three years, even if those moves are within a particular community.

Mother points to the children's exemplary school records as evidence that remaining in her custody is in their best interests. The fact that these children are excellent students, through all the upheaval in their lives, appears to be less because of Mother's supervision than because they are intelligent, resilient children. Mother admitted that she had only been to a few of the children's parent-teacher conferences. It is not clear whether the reason Mrs. Campbell has failed to attend all of the children's conferences is because she was uninterested or unable to attend, or that as she testified, "they would do so well in school" that "the teachers didn't really need to speak with" her. Given the little supervision the children appear to need vis-a-vis their schooling, we are not inclined to believe that Mother is the reason for their success.

Mother also argues that the trial court failed to consider the wishes of her oldest child in making its custody determination. Certainly, the court may take into consideration the "reasonable preference of the child if twelve (12) years of age or older." T.C.A. § 36-6-106(7) (2000 Supp.). However, in this case, we concur in the trial court's findings that the preference of the oldest child, Daryl, should be viewed with skepticism. The Guardian ad Litem report indicates that, although Daryl "expressed a definite preference to remain . . . with his Mom," he also stated "that he planned to protect his Mom from Campbell." Evidence presented at trial that Daryl wanted to stay with his mother in order to protect her from her new husband was uncontradicted. This is but further evidence that the children would suffer substantial harm if they were to stay in Mother's custody.

Mother also asserts that the trial court failed to make specific findings regarding the factors set out in T.C.A. § 36-6-106. Although the court did not specifically invoke the statute in its Order, it is apparent that the court based its ruling on statutory factors. The statute does not require that courts enumerate each of the ten factors in court findings or even consider each of the ten factors in every case.

Finally, Mother claims the trial court disregarded the recommendation of the Guardian ad Litem, and based its ruling in part on evidence which is not supported by the record. While it is true

that the Guardian did not recommend a change of custody, it is simply a recommendation which the court may consider but is not required to follow.

As to evidence the court may have considered which was not in the record, specifically that the trial court judge indicated he believed Mother "probably has a drug and alcohol problem," the trial court acknowledges that there is no evidence of such a problem except her close association with Mr. Campbell. However, given the overwhelming evidentiary findings which <u>are</u> supported by the record in this matter, it does not appear that the court's statement played any part in its decision. The evidence simply does not preponderate against the trial court's findings.

Therefore, we affirm the Order of the trial court changing custody of the parties' minor children to Father. Costs of appeal are assessed to the appellant, Lorrie Jean Campbell, and her surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.