IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Briefs February 23, 2001

IN THE MATTER OF JUSTIN IVORY JONES
**ROCHELLE MCDONALD v. PERCY L. JONES**

**A Direct Appeal from the Juvenile Court for Shelby County**
**No. G5202      The Honorable George Blancett, Special Judge**

_____

**No. W2000-575-COA-R3-CV - Filed May 21, 2001**

_____

        This is an appeal of an order changing custody of the parties' minor child.  Father filed a petition for change of custody, alleging that the change was in the best interests of the child.  The juvenile court, upon rehearing of father's petition to change custody, reconfirmed the original order changing custody to the father.  Mother appeals.  We reverse the order of the juvenile court and hold that custody of the minor child be returned to his mother.


**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Juvenile Court Reversed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Gail W. Horner, Germantown, For Appellant, Rochelle McDonald

Melanie E Taylor, Memphis, For Appellee, Percy L. Jones

**OPINION**

        This is a child custody case.  The minor child's father, Percy Lee Jones, Jr. ("Father"), petitioned for change of custody of the minor child, Justin Ivory Jones ("Child").  At the time of the petition, Child had been in the custody of his mother, Rochelle McDonald ("Mother"), since his birth on December 31,1994[1].  The Child's parents were never married, but on August 4, 1995, after executing a Voluntary Acknowledgment of Paternity of Child, the Juvenile Court entered an Order of Legitimation and Child was declared the legitimate child of Father.

---

[1]Although the Juvenile Court never entered a formal order awarding Mother custody of the Child, we believe such an order is implicit in the Order dated January 4, 1996, which awarded Father visitation.

On August 30, 1999, Father filed a Petition for Custody with the Juvenile Court. Father alleged that it was in the best interests of the Child that Father be awarded custody. On December 9, 1999, the Juvenile Court Referee found that a change in custody was warranted. Following a rehearing before the Special Judge of Juvenile Court, the Judge reconfirmed the decree changing custody from Mother to Father.

Mother appeals and presents four issues for review: (1) Whether the Petitioner/Father met his burden of proof in showing a material change of circumstances creating a substantial harm to the minor child and that a change of custody was in the best interests of the minor child; (2) Whether the trial court abused its discretion in preventing Appellant from presenting evidence dating from before November, 1997; (3) Whether the trial court erred in relying on evidence entered in a previous hearing before the court in which Petitioner/Father took a voluntary nonsuit; and (4) Whether the trial court erred in using a change of custody to punish the custodial parent for interference with visitation. Because we find for Appellant/Mother on the first issue, we pretermit the other issues presented on appeal.

The threshold issue in considering a petition to modify custody is whether there has been a material change in circumstances since the initial custody determination. *See, e.g., Placencia v. Placencia*, 3 S.W.3d 497, 499 (Tenn. Ct. App. 1999); *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App.1995); *Dailey v. Dailey*, 635 S.W.2d 391, 393 (Tenn. Ct. App.1981). Once the trial court determines that the petitioner has demonstrated a material change in circumstances, the court next determines what custody arrangement is in the best interests of the child. *See, e.g., Placencia*, 3 S.W.3d at 499; *Varley v. Varley*, 934 S.W.2d 659, 665-66 (Tenn. Ct. App.1996); T.C.A. § 36-6-106 (2000 Supp.). Unless the trial court finds a material change in circumstances, however, the court must deny the petition to modify custody. *See Placencia*, 3 S.W.3d at 499.

In a Petition to Modify Custody, the burden is on the non-custodial parent to prove a change of circumstances. *See, e.g., Nichols v. Nichols*, 792 S.W.2d 713, 714 (Tenn. 1990); *Musselman v. Acuff*, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991). Because an original custody decree is *res judicata*, there is a strong presumption in favor of the custodial parent which the non-custodial parent can only overcome by demonstrating that the alleged change in circumstances is "material." *See Taylor v. Taylor*, 849 S.W.2d 319, 322 (Tenn. 1993); *Nichols*, 792 S.W.2d at 715-16. This Court has described "changed circumstances" as follows:

> When two people join in conceiving a child, they select that child's natural parents. When they decide to separate and divorce, they give up the privilege of jointly rearing the child, and the divorce court must decide which parent will have primary responsibility for rearing the child. This decision of the Court is not changeable except for "change of circumstances" which is defined as that which requires a change to prevent substantial harm to the child. Custody is not changed for the welfare or pleasure of either parent or to punish either parent, but to preserve the welfare of the child. ***Custody is not***

> *changed because one parent is able to furnish a more commodious*
> *or pleasant environment than the other, but where continuation of*
> *the adjudicated custody will substantially harm the child.*

*Wall v. Wall*, 907 S.W.2d 829, 834 (Tenn. Ct. App. 1995)(citations omitted)(emphasis added).

In the case at bar, we hold that the evidence preponderates against the trial court's finding of a material change in circumstances. The initial change of custody order dated December 9, 1999 contains no findings on the part of the Juvenile Court Referee which indicate the basis for the change in custody. The Order reconfirming the initial change of custody dated February 10, 2000 states that, "the evidence and testimony demonstrated that substantial and material changes of circumstances occurred since the original custody decree and that these changes warranted changing the custody" of Child from Mother to Father. However, that Order does not indicate what the material and substantial changes consist of.

We summarize the testimony in the Statement of the Evidence: Father testified that he had experienced problems with visitation since Child's birth in 1994, primarily because of Mother's interference. Father states that he had difficulty locating or contacting Mother when his son was with her, and, on occasion, she did give him information concerning change of addresses that was not correct. Father testified concerning interferences with his visitation on four or five difference occasions. On one occasion, Mother cut short his visitation because Mother took Child out of day-care and placed the child in school, falsifying his birth records to do so. Father also testified that he went to the school and removed Child from the school and put him back in day-care. He also testified that since the award of custody by the referee, he has placed Child in preschool where he attends from 7:00 a.m. until 5:00 or 6:00 p.m. daily. Father further testified that Child and the stepmother, Mrs. Tanya Jones, had a very good relationship, and that allegations made by Mother that the stepmother hit Child with a brush, intentionally burned Child, and made Child walk in the street and fall, were false. Father also testified that Mother had threatened the stepmother and that Mother had told Child to curse Father and try to hurt the Joneses' new baby. Father has two other children that live with their mother somewhere in Memphis, but he did not know the exact address, because he has no established visitation with them. He listed the dates concerning Mother's interference with visitation. He further testified that he was aware that Child was scared of his stepmother, but that this was because Child was told to say this by his mother.

Mother testified that although she had moved several times, she had provided notice of the moves to Father. She said that she furnished a pager number to Father so that he could contact her at any time, and that she had never tried to interfere with Father's visitation. She testified that her concern was with the welfare of Child because of stories Child told her about his treatment by the stepmother. Mother further testified that Father had hurt Child, because Child had told her that Father had whipped him with a belt and hit him with the buckle. She denied the Father's allegations that she had hurt Child, or that she encouraged Child to curse or lie. She also testified that Child told her that the stepmother had pushed him in front of a car because he wet his pants in the parking lot, and the stepmother whips him with the brush because he wets his pants. She states that she can

never reach Father at home by telephone because Father has her number blocked on his home phone. She denies that she has refused Father's visitation and testified that she always arrives at the scheduled times, and that she has never threatened the stepmother.

Mother's grandfather, Reverend Leroy McDonald, testified that he saw the bruises on Child in February of 1999 after visitation with Father, and that Child told him that his stepmother had hit him. He further testified that he has never observed any interference by Mother with Father's visitation, but that Father has constantly tried to cause problems for Mother. He testified that he had seen Child go from being happy to being sad since the referee's award of custody in December of 1999.

Mother's sister, Janice Smith, testified that, since Mother lived with her and her children, she was witness for all the scheduled drop-offs. Ms. Smith states that Mother was always there at the scheduled times and that on occasions Father did not show up for the visitation as he was supposed to.

The record also reflects that the trial judge spoke with Child, apparently out of the presence of the parties and counsel, and the judge stated that Child told him that his daddy whips him with a belt.

The Statement of Evidence further provides:

> Special Judge Blancett then proceeded to rule. He stated that the father has tried to do things and the mother has interfered. Judge Blancett referred to the past history of these parties, including numerous contempt charges filed by father against Mother. The Judge used those charges filed prior to the November 1997 cutoff date to which all testimony had been limited during the rehearing. All testimony had been limited to a two year period, however, Judge Blancett used the entire record to decide the matter.
>
> Judge Blancett states that father is in a home with a wife and infant and Justin, and that this is normal and healthy. He states that mother is in a more confining situation in an apartment.
>
> Judge states that the court is primarily interested in the welfare of Justin and this includes bonding. Mother has been an obstruction to that bonding. The father should retain custody.

From our review of the testimony, it appears that the trial court based its finding of changed circumstances on Mother's interference in Father's visitation with Child. Although such interference is an appropriate consideration in custody determinations, T.C.A. § 36-6-106 (a)(10)(2000 Supp.), we are aware of no Tennessee case in which such interference, by itself, satisfied the material change

requirement.[2]  The Statement of the Evidence indicates that Father testified to only four or five different occasions on which Mother interfered with his scheduled visitation.

We, therefore, hold that Mother's interference did not amount to a substantial and material change of circumstances in this case, especially given the fundamental nature of the constitutional interests involved in removing custody from one parent in favor of the other. ***See generally In re: Askew***, 993 S.W2d 1, 3-5 (Tenn. 1999); ***Hawk v. Hawk***, 855 S.W.2d 573, 577 (Tenn. 1993). We wish to make it clear, however, that interference with visitation may, in some cases, constitute a substantial and material change of circumstances. As such, Mother is admonished to obey the Order granting Father visitation. We also note that the juvenile court made no finding concerning the best interest of the child but in the absence of changed circumstances, we need not consider the lack of such a finding.

The Order of the juvenile court granting custody to Father is reversed. Custody of the parties' child should be returned to Mother, with Father resuming his prior visitation schedule. Costs are assessed against Appellee, Percy L. Jones.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.

---

[2] However, there is at least one case in which this Court implied that interference may, if coupled with extremely rancorous relations between parents, constitute a material change. ***See Thomson v. Thomson***, 1999 WL 894446, at *8. In that case, we said:

> The Chancellor minced no words in warning mother that her obstreperous attitude would not be tolerated because it was inimical to Derek's welfare, and that Father would be awarded permanent, exclusive custody if she persisted in her contrariety. Mother would be well advised to heed the Chancellor's warning that he expected the visitation schedule to [be] honored.

***Id.***