# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 3, 2002 Session

## JAMES MICHAEL STAGGS v. LORI ANN STAGGS

**Appeal from the Chancery Court for Dickson County**
**No. 4902-97     Leonard W. Martin, Judge**

---

**No. M2001-01192-COA-R3-CV - Filed December 11, 2002**

---

The trial court transferred custody of the parties' two children from the mother to the father.  The mother argues on appeal that there was no change of circumstances to support a change of custody, and no proof that the change would be in the best interest of the children.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and J. S. DANIEL, SP. J., joined.

Sandra Jones, Nashville, Tennessee, for the appellant, Lori Ann Staggs.

Douglas Thompson Bates, III, Centerville, Tennessee, for the appellee, James Michael Staggs.

## OPINION

### I. DIVORCE AND CUSTODY

Mike and Lori Staggs are the parents of two daughters, Keaton Victoria Staggs, who was born in 1991, and Rachel Nicole Staggs, who was born in 1994.  Mike and Lori were divorced in May of 1998 on stipulated grounds, pursuant to Tenn. Code Ann. § 36-4-129(b).  The divorce decree recited that each party had acknowledged that the other was a fit and proper person to have custody of the children.  They were granted joint custody, with the wife named as the primary custodian.

The decree included a detailed visitation schedule, and ordered that physical custody of the children be shared, with the mother taking care of them during the week, and the father taking over during the weekend.  Mike Staggs had a regular weekday work schedule in his job as an electrician at Vanderbilt University, while Lori Staggs was a registered nurse who worked the weekend shift at Maury Regional Medical Center, so the custody arrangement was designed to work for everybody's benefit.

The decree also awarded the wife the marital home, and made her responsible for payments on the mortgage. The husband was ordered to pay $600 per month in child support, and certain marital debts. The wife was ordered to pay other marital debts, and to hold the husband harmless for them.

As often happens in divorce, one party was more successful than the other in adjusting to the new circumstances. Mike Staggs remarried. His new wife had two children from her earlier marriage, and the couple became parents of a new baby. The members of Mr. Staggs' blended family got along well with each other, but there were occasional conflicts between Lori Staggs and her former husband, especially when Keaton and Rachel were being transferred from one parent to the other.

Lori Staggs had a number of problems to deal with after the divorce. One major concern was her eighteen-year-old daughter from an earlier marriage, who was living with her. The daughter's boyfriend was allegedly dealing drugs while staying in Ms. Staggs' home. Among other things, the mother was worried that if he was arrested, it could lead to the forfeit of the vehicle she owned and her daughter drove. The record shows that Lori Staggs sold the marital home in Dickson in July of 1999, and moved into her mother's home in Centerville.

The proof also showed that Mike and Lori Staggs are both recovering alcoholics. The father testified that he has been clean and sober for ten years, and there was no proof to the contrary. The mother began drinking excessively after the divorce, to the point of consuming a 12 pack of beer daily. Hospital personnel records introduced into the record show that her increasing absences from work became a growing concern for her employer. She was asked to take a drug test on February 13, 2000, and she tested positive for alcohol and marijuana.

On February 29, 2000, Ms. Staggs began a ten-week program at a residential alcohol and drug treatment facility in Alabama. She did not inform Mr. Staggs of this development, but left the children with her sister, who was also a registered nurse. While she was in treatment, she received a letter from her employer, informing her that she had been discharged for cause, citing seven incidents of absenteeism and the positive result on her drug screen.

Mike Staggs learned that his ex-wife had left his children in the custody of her sister after he arrived at Lori Staggs' home for the customary weekend transfer of the children. He went to the sister's home, took the children from her, and brought them to his own house. On April 6, 2000, he filed a Petition for Change of Custody.

Lori Staggs finished her program in May, and Mr. Staggs promptly returned the children to her. An agreed order filed on June 7, 2000 declared that Ms. Staggs would continue to have primary physical custody of the children, made some small modifications in visitation arrangements, and set a date for taking the depositions of the parties. Ms. Staggs subsequently filed for bankruptcy. Again, she did not inform her former husband of her actions, but one effect of her bankruptcy petition was

to leave Mike Staggs liable for debts that the court had ordered her to pay and to hold him harmless for.

## II. THE CUSTODY HEARING

The hearing on Mr. Staggs' petition began on the morning of February 28, 2001, and continued through the following day. Nine witnesses testified. Aside from the parties themselves, the witnesses were Mike Staggs' mother Ruth, his current wife, Lori Staggs' mother, her sister, her boyfriend, her supervisor at work, and a nurse-counselor who runs a support group for nurses with drug and alcohol problems. Excerpts from two video depositions of Lori Staggs were also played for the court, as well as a recording of a phone call from Keaton to Ruth Staggs, taken from the grandmother's telephone answering machine.

There were considerable discrepancies between the testimony of Mike Staggs, his wife, and his mother on one hand, and of Lori Staggs, her sister, and her mother on the other. The facts in dispute included the quality of care Ms. Staggs provided to the children prior to her departure for Alabama, the living arrangements Ms. Staggs had provided for her older daughter and the daughter's boyfriend, the circumstances of the termination of Ms. Staggs' employment, and the identity of the instigator of several arguments that occurred when the children were being transferred from one parent to another.

We will not discuss the testimony in detail. We note that Lori Staggs acknowledged her alcohol problems, and testified that she had succeeded in remaining sober after completion of the residential drug program. By working with her drug and alcohol abuse counselor, she had managed to keep her nursing license, and she found a new job as a nurse at Hickman County Hospital. Her new schedule involves different hours every week, with rotating shifts on weekends and weekdays. According to her supervisor, she is doing well on the job.

At the conclusion of the proof, the attorneys for the parties waived closing arguments, and the court announced its findings from the bench. The trial judge found that there had been a material and substantial change of circumstances that "has been detrimental to the children, borderline devastating, and certainly would warrant consideration of a change of custody." The judge then moved on to consideration of the relevant factors, found in Tenn. Code Ann. § 36-6-106, for determining which parent is better suited to exercise primary custody of the children.

The judge found that there was not much difference between the parties in regard to most of the factors enumerated in the statute, such as the "love, affection and emotional ties existing between the parents and the child," and "the disposition of the parents to provide the child with food, clothing, medical care, education . . . ." *See* Tenn. Code Ann. § 36-6-106(1) and (2). He commended Ms. Staggs for admitting to her alcohol problem and attempting to deal with it, but found that she had not completely conquered the emotional problems associated with it, while finding that Mr. Staggs had proven himself to be "mentally physically healthy and stable." *See* Tenn. Code Ann. § 36-6-106(5). The judge also mentioned the alleged drug-dealing activities of the

wife's daughter's boyfriend, in the context of Tenn. Code Ann. § 36-6-106(9) which directs the court to consider "the character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child." The judge also found that the father, his new wife, and his mother were the more credible witnesses, and that there were some significant contradictions in the testimony of Lori Staggs and the witnesses called on her behalf.

The court accordingly determined that the father should be designated as the primary residential parent of Keaton and Rachel, with "free and liberal visitation" for the mother. The court's judgment of April 3, 2001 included flexible provisions that would assure the mother of visitation with her daughters every week. She was also ordered to pay $600 per month in child support, and to reimburse the father for all payments he made towards the bankrupted debts she had been obligated to pay under the Final Decree of Divorce.

The mother subsequently replaced her attorney. Her new attorney filed a Motion for New Trial or in the Alternative a Motion to Alter or Amend. *See* Rule 59, Tenn. R. Civ. P. At the hearing on the motion, the attorney claimed that she had uncovered new evidence that went to the credibility of the father and his new wife. The trial court ruled that a new trial was not warranted, because the evidence she wished to present did not involve anything that could not have been uncovered by the previous attorney through the exercise of reasonable diligence, and because its presentation would not likely lead to a different result. *See Seay v. City of Knoxville*, 654 S.W.2d 397 (Tenn. Ct. App. 1983). The court accordingly denied the motion. This appeal followed.

### III. ARGUMENTS ON APPEAL

#### A. CHANGE OF CIRCUMSTANCES

A decree granting custody of minor children is considered to be res judicata on the circumstances existing at the time the decree is rendered. *Hoalcraft v. Smithson*, 19 S.W.2d 822 (Tenn. Ct. App. 1999); *Solima v. Solima*, 7 S.W.3d 30 (Tenn. Ct. App. 1998). In order for the court to change custody, the party seeking such a change must demonstrate to the court that there has been a significant and material change of circumstances that adversely affects the children involved, and that the children's best interest is served by changing the existing custodial arrangement. *Caudill v. Foley*, 21 S.W.3d 203 (Tenn. Ct. App. 1999); *Dodd v. Dodd* 737 S.W.2d 286 (Tenn. Ct. App. 1987). Our courts have also stated on numerous occasions that the change of circumstances relied upon by the petitioner should be one that could not have been foreseen at the time of the original custody decision. *Adelsperger v. Adelsperger*, 970 S.W.2d 482 (Tenn. Ct. App. 1997); *Elliot v. Elliot*, 825 S.W.2d 87 (Tenn. Ct. App. 1991); *Rogero v. Pitt*, 759 S.W.2d 109 (Tenn. 1988).

In her appellate brief, Ms. Staggs' attorney argues that the father did not meet the threshold requirement of demonstrating an unforeseen change of circumstances that adversely affected the children, and thus that the judge was not entitled to move on to the question of the best interests of the children. *See Placencia v. Placencia*, 3 S.W.3d 497, 499 (Tenn. Ct. App 1999). She points out that while the court did declare that such a change had been proven, it did not specify exactly what

the material change was. It appears obvious to us, however, that the judge was referring to Ms. Staggs' descent into alcohol abuse.

The appellant contends that at the time the trial court rendered its final decree of divorce in this case, each party was aware of the other's alcohol problems, and that this did not prevent the judge from approving their declaration that both were fit and proper persons to exercise custody of the children. Thus, she argues, Ms. Staggs' drinking could not be considered unforeseeable.

Regrettably, our prior pronouncements on forseeability are a poor fit for a situation like the present one. It is now widely acknowledged by society that alcoholism is a disease that cannot be permanently cured, and that the recovering alcoholic is always in danger of succumbing to his or her addiction. In theory then, it is always foreseeable that an alcoholic will begin drinking again. We do not believe, however, that our recognition of this unfortunate fact should prevent us from considering a change of custody where a previously sober parent has fallen back into habits that are detrimental to the children in her care.

The appellant notes that the court found that the children were doing well in school, and that they were well-adjusted, and she argues that there was therefore no proof that Ms. Staggs' drinking adversely affected them. We do not agree. The evidence shows that at the time Ms. Staggs was drinking, her ability to give the children the attention they needed was drastically impaired, and we can infer that they suffered physically and mentally as a result.

While we do not wish to belabor the point, there was testimony that she did not bathe the children regularly, that they developed impetigo and scabies while in her care, and that she was slow to seek medical help for chicken pox and a broken arm. On one occasion, Keaton called her grandmother to tell her that she was unable to wake her mother up, and she was afraid she would be late for school again. Lori Staggs admitted that she had been drinking the night before, but claimed that when she heard Keaton talking on the phone, she got up and took her to school. It is undisputed that Keaton missed 38 days of school in a single year.

The appellant responds to each of these claims by denying its truth or minimizing its significance. But the trial court found Mr. Staggs and his witnesses to be more credible than his former wife and her witnesses. We are obligated to grant great deference to the trial court on questions of credibility. The reason is that we do not have the opportunity that the trial judge had to observe the manner and demeanor of the testifying witnesses. *Goodman v. Goodman*, 8 S.W.3d 289 (Tenn. Ct. App. 1999); *Jones v. Jones*, 784 S.W.2d 349 (Tenn. Ct. App. 1989). In light of the testimony as to Ms. Staggs' inattention to the needs of her children, we believe that Mr. Staggs met his burden of proving a material change of circumstances such as would justify further inquiry into the question of custody.

## B. THE BEST INTEREST OF THE CHILDREN

At the time of the hearing on the Petition to Modify Custody, Ms. Staggs testified that she had been sober for one full year, that she was gainfully employed in a responsible job, that she had regularly attended Alcoholics Anonymous meetings, and that she had undergone regular random drug and alcohol drug testing which confirmed her sobriety. She argues on appeal that the events that led to the Petition to Modify Custody were merely "a bump in the road." She insists that she faced her problem voluntarily, and dealt with it successfully, and that at this point nothing is different than it was at the time of the initial award of custody.

The trial judge commended Ms. Staggs for the progress she had made, and reminded her that she still had an important role to play in the upbringing of her children. But he found that it was in the best interest of the children that custody be transferred to Mr. Staggs. We note that custody determinations are reviewed by this court de novo, accompanied by a presumption of the correctness of the trial court's decision, unless the evidence preponderates otherwise. *See Hass v. Knighton*, 676 S.W.2d 554 (Tenn. 1984); Rule 13(d), Tenn. R. Civ. P.

The trial court found that Mr. Staggs had proven himself the more stable of the two parents, and the evidence certainly did not preponderate against that finding. The court also found the testimony of Mr. Staggs more credible than that of his former wife, and stated that the relative honesty or trustworthiness of the parties was a non-statutory factor that the court could take into account when determining which parent is more fit to exercise custody. *See Gaskill v. Gaskill*, 936 S.W.2d 626 (1996).

We observe that aside from the discrepancies between the testimony of Mr. Staggs and Ms. Staggs, there were numerous contradictions between the testimony of Ms. Staggs and the witnesses who testified on her behalf, between her testimony and the documentary evidence, and between her testimony on the stand and her testimony on deposition. Honesty is an important factor in all human relationships, but perhaps especially so in the struggle to overcome alcoholism. We do not believe the evidence preponderates against the trial court's finding that it is in the best interest of the two children that their custody be placed with their father.

## IV.

The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Dickson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Lori Ann Staggs.

_____

BEN H. CANTRELL, PRESIDING JUDGE, M.S.