IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 24, 2005 Session

**EDWARD A. MILLER v. KERRY KELK**

**Appeal from the Juvenile Court for Sevier County**
**No. 95-M4-275    Dwight E. Stokes, Judge**

**No. E2003-02180-COA-R3-JV - FILED JULY 18, 2005**

On July 10, 1997, Edward A. Miller ("Father") was designated the primary residential parent for the parties minor child. Kerry L. Kelk ("Mother") was not ordered to pay any child support at that time as that order was silent on the issue of child support. No order requiring Mother to pay child support was entered until May 26, 1999. In the May 1999 order, the Trial Court refused to award Father any retroactive child support back to when he was awarded custody. The Trial Court in a later order also held Father responsible for all of the health insurance premiums covering the child from November of 1999 through March of 2002. The Trial Court held each party responsible for one-half of the health insurance premiums from that date on. We conclude that the Trial Court erred in refusing to award retroactive child support to Father for the period from when he was designated the primary residential parent up until May 26, 1999. We further conclude that the Trial Court erred by refusing to hold Mother responsible for all of the child's health insurance premiums.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile
Court Affirmed in Part and Reversed in Part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

Wanda G. Sobieski and Diana M. Messer, Knoxville, Tennessee, for the Appellant Edward A. Miller.

James R. Hickman, Jr., Sevierville, Tennessee, for the Appellee Kerry Kelk.

**OPINION**

## Background

This appeal centers primarily around Mother's child support arrearages which have accrued intermittently over the past several years. After the parties lived together for approximately two years, their only child, a son, was born on June 15, 1995. The parties apparently separated not long after the child was born and on September 12, 1996, Father filed a petition to establish paternity. Father also requested that he be designated the primary residential parent of the minor child. After independent psychological evaluations of the parties were completed, a full evidentiary hearing was conducted. Following the hearing, the Trial Court entered an order on July 10, 1997, which, among other things, designated Father as the primary residential parent and established Mother's visitation schedule. For some unknown reason, the Trial Court did not order Mother to pay any child support when it designated Father the primary residential parent as that July 10, 1997 order is silent as to Mother's child support.

On October 6, 1997, Father filed a petition to establish child support. Father's petition was scheduled for a hearing in February of 1998 and, in the meantime, Father sought discovery related to Mother's financial condition. Although the hearing did not take place in February, Mother's unsupervised visitation was suspended around that time because the child had been physically abused while in Mother's care. The Trial Court appointed Dr. Nordquist "as the Court's own witness" and instructed the parties to undergo an evaluation for the "express … purpose of determining whether the child is in danger and whether there should be modifications to the custody and visitation arrangements…." Mother's unsupervised visitation eventually was resumed after she completed anger management classes.

Almost two years after Father was designated the child's primary residential parent and over 1½ years after Father filed his petition to establish child support, at a hearing on May 26, 1999, the Trial Court finally and for the first time ordered Mother to pay child support. At this time, Mother was able to provide health insurance for the child at a cost of only $19 a month. The Trial Court determined Mother's child support obligation should be $252 per month, but allowed Mother to deduct the $19 health insurance cost, thereby bringing her total monthly obligation to $233. An order setting forth the Trial Court's findings and holdings from the May 1999 hearing was not entered until December of that same year. The following month, Father filed a motion to alter or amend claiming, *inter alia*, that the provisions in the order addressing current and past child support obligations and the payment of health insurance were contrary to the evidence and a "manifest error of law or mistake of fact." In August of 2001, the Trial Court ruled on many aspects of Father's motion to alter or amend but specifically reserved its ruling on whether to alter or amend its order regarding the child support and insurance payments.[1]

---

[1] With regard to Father's claim that Mother's child support payments were set too low, an Affidavit of Indigency filed by Mother in November of 2001 shows that her monthly take-home pay from her primary job was $1,300. Although

(continued...)

In March of 2002, the Trial Court entered its order addressing Father's remaining issues regarding child support payments[2]. By this time, Father was paying all of the health insurance costs for the parties' child and had been doing so for over 2½ years. In the March 2002 order, the Trial Court also denied Father's request for reimbursement for all or a portion of Dr. Nordquist's fees incurred while conducting the evaluations of the parties and their child. The Trial Court apparently reached this conclusion because the results of Dr. Nordquist's report ultimately were beneficial to Father and because Father had the greater ability to pay. In relevant part, this order also provided:

> 2. Although custody changed in 1997, no child support award or order was entered from 1997 through May 26, 1999. This Court does not now.

> * * *

> 8. The total child support arrearage awarded [from June 1999 to March 2002] is … Seven Thousand Four Hundred Sixty-Two Dollars ($7,462).

> 9. [Father's] request for interest on the child support arrearage is denied because there were delays in the final setting of support occasioned by both parties.

> 10. This Court finds that [Father] made health insurance payments for the child which were unreimbursed from [Mother] from November 1999 to present. This Court awards him nothing in reimbursement for payment of the minor child's health insurance premiums.

> 11. This Court awards zero interest on the health insurance payments made by Mr. Miller for the minor child's health insurance premiums.

> 12. Based upon the parties' stipulated calculations, current child support is set in the amount of Four Hundred Seventy-Six Dollars ($476) per month to begin April 1, 2002.

---

[1](...continued)
Mother also had a second job, Mother did not provide her income information concerning this job, stating only that it was part-time and her income from it varied.

[2] This order was entered on May 21, 2002, but was entered *nunc pro tunc* to March 5, 2002. In this Opinion we will refer to this order as the March 2002 order.

13. Beginning April 1, 2002, each party shall pay one-half of the cost of the child's health insurance coverage. For [Mother], her share will be in addition to the child support set forth above.

14. No attorney's fees are awarded to either party.

Father timely filed an application for extraordinary appeal pursuant to Rule 10, Tenn. R. App. P. This Court denied the Rule 10 application on July 15, 2002, after concluding Father's request was not an appropriate case for a Rule 10 appeal.

In August of 2002, Father filed a petition seeking to have Mother held in contempt of court. According to Father's petition, Mother was ordered in March of 2002 to pay child support in the amount of $476 per month and one-half of the child's health insurance premium which equaled an additional $62.50 per month. Father's petition also alleged that Mother had been ordered to pay arrearages which at that time totaled $7,462. Father claimed Mother was in contempt of the Trial Court's order and had accumulated additional arrearages totaling at least $1,106.90.

Mother responded to Father's petition, denying that she was in contempt of court. Mother also sought to have the amount of her child support payments decreased, claiming her income was substantially lower than it was when the last order was entered.

A trial on the remaining issues took place in April of 2003, following which the Trial Court entered an order which provided, in relevant part, that Mother was in contempt for unilaterally lowering her child support payments. After noting that Father did not seek to have Mother incarcerated, the Trial Court awarded Father $1,500 in attorney fees and expenses for Mother's contempt. With regard to Mother's child support arrearages, the Trial Court noted that in March of 2002, Mother was in arrears $7,462, plus an additional $741.07 for statutory interest through the date of trial. Since March of 2002, Mother was in arrears an additional $1,826.36. Because Mother's income had substantially decreased, the Trial Court then lowered Mother's child support payment to $321 per month retroactive to February of 2003. Finally, the Trial Court ordered Mother to make payments on the arrearages in a manner reasonably calculated to pay the amount owed as soon as possible, but in no event less than $60 per month.

Father appeals claiming: 1) the Trial Court erred when it refused to require Mother to pay child support for the first two years after Father was designated the primary residential parent; 2) the Trial Court erred when it denied Father reimbursement for the child's health insurance premiums; 3) the Trial Court erred when it denied statutory interest on child support and health insurance arrearages; and 4) the Trial Court erred when it denied reimbursement for attorney's fees and a portion of Dr. Nordquist's fees. Mother raises one issue: that Father failed to file his appeal in a timely manner and, therefore, this Court lacks jurisdiction as to this appeal. Alternatively as to Father's issues, Mother argues the Trial Court's rulings were within its discretion and should be affirmed.

## Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

The first issue we must address is Mother's claim that this appeal is untimely and, therefore, this Court is without jurisdiction. More specifically, Mother contends that the Trial Court's March 2002 order is the actual "final" order insofar as the child support and health insurance issues are concerned. Since the present appeal was filed well after thirty days from the date of the March 2002 order, Mother claims this appeal should be dismissed.

In resolving Mother's issue, we are guided in large part by Tenn. R. Civ. P. 54.02, which provides as follows:

> **Rule 54.02. Multiple Claims for Relief. –** When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

The Trial Court's March 2002 order was far from being the final order adjudicating all of the claims presented in this action. We note that Mother had filed a petition for a change of custody in December of 2001. The custody issue remained a pending matter until finally resolved in Father's favor following the trial in April of 2003. Father apparently believed that the March 2002 order was interlocutory in nature given his filing of an application for an extraordinary appeal pursuant to Rule 10, Tenn. R. App. P., which this Court denied. Father was correct. We need not belabor this issue any further as it is readily apparent that the March 2002 order was not a final appealable judgment and, therefore, Father's appeal is timely.

The next issue we will address is Father's claim that the Trial Court erred when it refused to order Mother to pay any child support for the time period from July 10, 1997, through May 26, 1999. In *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244 (Tenn. Ct. App. 2000), this Court acknowledged a trial court's discretion in setting the appropriate amount of child support payments, stating:

> Having found that the juvenile court properly determined that Mr. Kaatrude should pay back child support, we turn to the question of the proper amount of the support. Setting child support is a discretionary matter. *See State ex rel. Coleman v. Clay*, 805 S.W.2d at 755. Accordingly, we review child support decisions using the deferential "abuse of discretion" standard of review. This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *See BIF v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed). While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

> The goal of the statutes and regulations governing child support is to assure that children receive support reasonably consistent with their parent or parents' financial resources. *See Shell v. Law*, No. 03A01-9608-CV-00251, 1997 WL 119581, at *4 (Tenn. Ct. App. March 18, 1997), *perm. app. dismissed* (Tenn. Jan. 29, 1998). The statutes and regulations promote this goal by requiring the courts to set child support using guidelines developed by the Tennessee Department of Human Services to promote both efficient child support proceedings and dependable, consistent child support awards. *See* Tenn. Code Ann. § 36-5-101(e) (Supp. 1999); Tenn. Comp. R. & Regs. r. 1240-2-4-.02(2)(b), (c) (1994).

*Kaatrude*, 21 S.W.3d at 248-49. *See also Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000) ("[R]etroactivity provisions were added to the Child Support Guidelines [in 1994]. The specific inclusion of these provisions in 1994 limited the courts' discretion in setting amounts of child support. While the juvenile court continues to have discretion in making awards of child support, that discretion must be exercised within the strictures of the Child Support Guidelines.").

Very recently, this Court issued its opinion in *State ex rel. Ogelsby v. Bridges*, No. E2004-01675-COA-R3-CV, 2005 Tenn. App. LEXIS 290 (Tenn. Ct. App. May 17, 2005). In

*Ogelsby*, we held that it was proper for the trial court to "order Father to pay support retroactive to the date on which Mother obtained custody …." *Id.*, at *13. In reaching this conclusion we stated:

> The obligation to support, care for, and nurture their children is imposed upon both parents, and the extent of their duty to support depends upon their ability to provide that support. [*Varney v. Louise*, No. M2000-03234-COA-R3-CV, 2001 Tenn. App. LEXIS 862, (Tenn. Ct. App. Nov. 21, 2001)] (citing *State ex rel. Grant v. Prograis*, 979 S.W.2d 594, 600-01 (Tenn. Ct. App. 1997)). This obligation exists even in the absence of a court order. *Id.* In *Varney*, however, we did not indicate the date to which the award of support should be retroactive. We subsequently clarified our holding in *Varney*, stating that "the [*Varney* court's] recognition of every parent's obligation to support his or her child from minority even without a court order clearly indicates the propriety of awarding support retroactive to the time the father was granted custody." *State v. Harrell*, 2002 Tenn. App. LEXIS 645, No. E2001-01710-COA-R3-CV, 2002 WL 31011260, at *1 (Tenn. Ct. App. E.S., filed September 9, 2002).

*Ogelsby*, 2005 Tenn. App. LEXIS 290, at *15.[3] *See also In re Moats*, No. E2002-01635-COA-R3-JV, 2003 Tenn. App. LEXIS 318 (Tenn. Ct. App. Apr. 29, 2003), *no appl. perm. appeal filed*, (Remanding case to the trial court to determine retroactive child support for the period from the child's birth to the filing of the petition to establish child support, which was filed almost fifteen years after the child's birth).

A non-custodial parent is required to pay child support in an amount consistent with the Child Support Guidelines ("Guidelines"). Any variance from the amount of child support established by the Guidelines requires written justification by the trial court. According to Tenn. Code Ann. § 36-5-101(e)(1)(A):

> In making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate

---

[3] We note that when our Opinion in the present case was released, the sixty day time period for the parties in *Ogelsby* to file a Rule 11 application for permission to appeal to the Tennessee Supreme Court had not yet expired.

shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

In the present case, we would be hard pressed to characterize the Trial Court's refusal to order Mother to pay child support for the time period from July 10, 1997, through May 26, 1999, as a "deviation" from the Guidelines. It is more akin to a renunciation of the Guidelines, at least for that time period. This conclusion is reinforced by the fact that the Trial Court gave no written justification whatsoever explaining why Mother should be relieved altogether of her child support obligation during this particular time frame, especially given that she was employed.

The parties were able to stipulate to the Trial Court the amount of Mother's income from July 10, 1997, through May 26, 1999, as well as the amount of child support she would have been required to pay under the Guidelines had she been ordered to do so. Based on these figures, the amount of child support Mother should have paid for this particular time period totals $6,428.60. We conclude that the Trial Court erred when it did not require Mother to pay child support for the time period from July 10, 1997, through May 26, 1999, and we further hold that Father is entitled to a judgment in the additional amount of $6,428.60.

The next issue is whether the Trial Court erred when it refused to require Mother to reimburse Father for any of the payments he made toward the child's health insurance premiums. In the March 2002 order, the Trial Court noted that beginning in November of 1999, the child's health insurance premiums remained "unreimbursed" from Mother. Nevertheless, the Trial Court held that Father was awarded "nothing in reimbursement for payment of the minor child's health insurance premiums." The Trial Court then ordered each parent to pay one-half of the child's health insurance costs beginning April 1, 2002. It is unclear how much Mother paid toward the health insurance after April 1, 2002, although we do know that she did not make all of the required payments.

The Guidelines provide that "[i]f the obligor is not providing health insurance for the child(ren), an amount equal to the amount necessary for the obligee to obtain such insurance shall be added to the percentage calculated in the above rule."[4] *See* Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(1)(a). In *Anderton v. Amari*, No. M1999-01145-COA-R3-CV, 2000 Tenn. App. LEXIS 419 (Tenn. Ct. App. June 27, 2000), *no appl. perm. appeal filed*, the mother was the primary residential parent and the trial court ordered the father to pay one-half of the health insurance premiums for the parties' minor child. Relying on the relevant portion of the Guidelines quoted above, we stated that:

Under this rule, the obligation to either provide or pay for the child's health insurance is clearly placed on the non-custodial parent. In the

---

[4] The new Child Support Guidelines incorporating income shares as the manner to calculate child support were not in effect when this case was pending before the Trial Court. We express no opinion on how the income shares method would affect Mother's overall child support obligation.

case at bar, Mrs. Anderton maintains health insurance for Vincent. The trial court ordered Mr. Amari to reimburse Mrs. Anderton for only one-half of the cost of this insurance, or $24.25 per month. Because we conclude that the cost of Vincent's health insurance is solely the obligation of Mr. Amari, we modify the trial court's ruling to reflect that Mr. Amari shall pay $48.50 per month to Mrs. Anderton as reimbursement for the cost of maintaining health insurance for Vincent.

*Anderton*, 2000 Tenn. App. LEXIS 419, at **23-24.

In light of the clear directive of the Guidelines and in the absence of any written justification by the Trial Court supporting a variance from this directive, we hold that the Trial Court erred when it failed to enter a judgment in favor of Father for the total amount of the health insurance premiums for the child's coverage paid by him between November of 1999 through March of 2002. We further conclude that the Trial Court erred when it ordered Father to pay one-half of the child's health insurance premiums beginning in April of 2002. On remand, the Trial Court is instructed to determine the total amount of health insurance premiums paid by Father from November of 1999 through March of 2002, and to enter a judgment for Father in that amount. The Trial Court also shall enter judgment for Father representing one-half of the health insurance premiums beginning in April of 2002.[5]

The next issue is Father's claim that the Trial Court erred when it denied his request for statutory interest on: (1) the child support arrearages from July 10, 1997, through May 26, 1999; and (2) the health insurance arrearages. In making this argument Father relies exclusively on the following provisions of Tenn. Code Ann. § 36-5-101(a)(5):

> Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state and shall be entitled to full faith and credit in this state and in any other state. Such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties. If the full amount of child support is not paid by the date upon which the ordered support is due, the unpaid amount is in arrears and shall become a judgment for the unpaid amounts and shall accrue interest from the date of the arrearage at the rate of twelve percent (12%) per annum. All interest which accumulates on arrearages shall be considered child support. Computation of interest shall not be the responsibility of the clerk.

---

[5] This, of course, is in addition to any additional arrearages incurred by Mother when she failed to pay her full one-half of the health insurance premiums.

In ordering Mother to pay child support for the time period from July 10, 1997, through May 26, 1999, we have for the first time set, by court order, the amount of child support due for that time period. It necessarily follows that until our decision, there simply was no court ordered "date upon which the ordered support is due...." Accordingly, we reject Father's argument that pursuant to Tenn. Code Ann. § 36-5-101(a)(1) he is entitled to 12% interest on the child support due from July 10, 1997, through May 26, 1999.

With regard to interest on the unreimbursed health insurance premiums, from November of 1999 through March of 2002, there likewise was no court order, before ours, requiring Mother to pay the health insurance premiums by a certain "date". As of April 2002, Mother was ordered, albeit incorrectly, to pay only one-half of the insurance. For the same reasons discussed above, Father is not entitled to 12% interest on the health insurance premiums he paid from November of 1999 through March of 2002, or the one-half of the post-April 2002 insurance premiums that he was improperly ordered to pay. However, to the extent that Mother failed to pay her one-half of the insurance premiums starting as of April 2002, as ordered by the Trial Court and Father had to pay that portion as well, then Father is entitled to statutory interest on that amount. To the extent the Trial Court did not award Father interest on this health insurance Mother was ordered to pay but did not pay after April 2002, the judgment of the Trial Court is hereby modified, and the Trial Court on remand shall enter a judgment which includes this interest amount.

Father's next issue is his claim that the Trial Court erred when it refused to require Mother to pay all or a portion of Dr. Nordquist's fee and when it awarded Father only $1,500 in attorney fees. In support of his argument, Father cites *Sandusky v. Sandusky*, No. M2000-00288-COA-R3-CV, 2001 Tenn. App. LEXIS 226 (Tenn. Ct. App. April 5, 2001), *no appl. perm. appeal filed*, wherein we stated:

> Spouses who are required to return to court to enforce their former spouse's child support obligations may recover their legal expenses. Tenn. Code Ann. § 36-5-103(c) (Supp. 2000). The purpose of permitting these awards is to protect and promote a child's right to support. Accordingly, requiring parents who frustrate child support orders to underwrite the expense of vindicating a child support order is appropriate. *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992).

> While decisions regarding requests for legal expenses are discretionary, *Placencia v. Placencia*, 3 S.W.3d 497, 504 (Tenn. Ct. App. 1999), awards for these expenses incurred by a spouse to vindicate child support rights are becoming familiar and almost commonplace. *Deas v. Deas*, 774 S.W.2d 167, 170 (Tenn. 1989); *Sherrod v. Wix*, 849 S.W.2d at 785. These awards are appropriate when the parent seeking to defend or to enforce a child support obligation prevails or when requiring the prevailing spouse to pay his

-10-

or her legal expenses would inequitably reduce the amount of support the child receives. *Richardson v. Richardson*, 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997). A spouse who is otherwise entitled to an award for legal expenses should not be prevented from collecting them simply because he or she might be financially able to pay these fees on their own. *Gaddy v. Gaddy*, 861 S.W.2d 236, 241 (Tenn. Ct. App. 1992).

*Sandusky*, 2001 Tenn. App. LEXIS 226, at **26-27.

It is clear that Father enjoyed a good bit of success in the Trial Court and Mother was clearly in arrears on her child support payments. The one time Mother was found to be in contempt, the Trial Court did award Father $1,500 in attorney fees and expenses. While we have increased the total amount of Father's judgment against Mother in this appeal, for the most part Mother cannot be said to have been in violation of a court order because she never was ordered to pay child support from July 10, 1997, through May 26, 1999, or health insurance premiums from November 1999 through March 2002. While Father has every right to challenge these rulings by the Trial Court on appeal, and has done so successfully, Mother cannot be said to have violated any existing order of support on these matters. An award of attorney fees is discretionary, and after reviewing the entire record we are unable to conclude that the Trial Court abused its discretion when it awarded Father only $1,500 in attorney fees. It is for these reasons that we also decline Father's request to award his attorney fees incurred on appeal.

With regard to Dr. Nordquist's fees, part of that fee was necessitated by Mother's alleged physical abuse of the child and the Trial Court's justified reluctance to allow unsupervised visitation absent an updated evaluation. Since Mother's behavior directly resulted in an increase in Dr. Nordquist's fees, we believe it is appropriate to modify the Trial Court's judgment and require Mother to be responsible for one-half of the total amount of Dr. Nordquist's fees to be determined by the Trial Court on remand.

The final issue raised by Father, and one we have not mentioned previously, is his claim that the Trial Court erred when it appointed counsel to represent Mother. We agree with Father that in most civil domestic law cases, court appointed counsel would not be appropriate. However, if Mother was indigent and faced with being held in criminal contempt, then she would have been entitled to court appointed counsel. *See* Tenn. R. Crim. P. 44(a). We fail to see what form of relief Father would be entitled to on appeal and we are unable to correct what he claims to be the inherent unfairness of Mother improperly being appointed counsel. On remand, to the extent Mother seeks continued representation by court appointed counsel, we instruct the Trial Court to further investigate the level of Mother's claimed indigency, and to appoint counsel to represent Mother only as required under the law.

The Trial Court ordered Mother to pay a minimum of $60 per month on the arrearage. Given that the judgment for the arrearage against Mother has been increased on appeal, the Trial

Court on remand is to reconsider the minimum amount appropriate for Mother to pay each month toward the arrearage and to set a new minimum amount.

In the various orders entered by the Trial Court, there were findings that Mother was in arrears and in contempt of court. We in no way disturb any of these findings which are not directly at issue on this appeal. With regard to the matters that are at issue here, we conclude Father is entitled to:

(1) a judgment in the amount of $6,428.60, which represents unpaid child support from July 10, 1997, through May 26, 1999;

(2) a judgment for all of the health insurance premiums paid by Father from November of 1999 through March of 2002, in an amount to be determined by the Trial Court on remand;

(3) a judgment for one-half of the health insurance premiums paid by Father since April of 2002, in an amount to be determined by the Trial Court on remand;

(4) a judgment for any health insurance premiums incurred after April of 2002 which Mother was ordered to pay, but did not, plus interest at the rate of 12% per annum, in an amount to be determined by the Trial Court on remand;

(5) a judgment for one-half of Dr. Nordquist's fees, in an amount to be determined by the Trial Court on remand;

The Trial Court is instructed to enter one judgment for Father which includes arrearages, etc., not at issue on this appeal, the various items set forth above, as well as a minimum monthly amount to be paid by Mother toward the arrearages.

### Conclusion

The judgment of the Trial Court is affirmed in part and reversed in part, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for the collection of the costs below. Exercising our discretion, costs on appeal are assessed one-half against the Appellant, Edward A. Miller, and his surety, and one-half against Appellee, Kerry R. Kelk.

_____
D. MICHAEL SWINEY, JUDGE

-12-